## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. BAH-24-289 |
| | * | |
| WILLIAM BROWN, III, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**\*\*\*\*\*\*\***

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned attorneys, respectfully submits this memorandum in advance of the sentencing hearing for Defendant William Brown, III, currently set for January 7, 2026. For the reasons set forth below, the government submits that 60 months of probation is sufficient, but not greater than necessary, to fulfill the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Defendant played a minor—albeit crucial—part in a sprawling drug distribution and money laundering conspiracy that stretched across the United States and beyond. In his role as a courier for co-Defendant Michael Micklos' drug trafficking organization, the Defendant helped transport marijuana for distribution and launder the organization's proceeds. The Defendant and other couriers working for Micklos and other co-conspirators ensured that the conspiracy's activities could be carried on in a way that reduced exposure for the key players who were responsible for the wider scheme.

### A. The Micklos/Xu Drug Trafficking and Money Laundering Organization and the Defendant's Conduct

The conspiracy at the heart of this case did not occur in a void. As more states have loosened restrictions on marijuana, the illegal market has remained robust and has largely been

taken over by Chinese criminal organizations.  *See Invasion of the Homeland: How China Is Using Illegal Marijuana to Build a Criminal Network Across America: Hearing Before the Subcomm. on Oversight, Investigations, and Accountability of the H. Comm. On Homeland Security*, 119th Cong. (Sept. 18, 2025) (witness statements); *Marijuana and Mexican Cartels: Inside the Stunning Rise of Chinese Money Launderers*, NBC News (Aug. 3, 2024), https://www.nbcnews.com/investigations/marijuana-mexican-cartels-stunning-rise-chinese-money-launderers-rcna158030; Sebastian Rotella et al., *Gangsters, Money and Murder: How Chinese Organized Crime Is Dominating America's Illegal Marijuana Market*, ProPublica (March 14, 2024), https://www.propublica.org/article/chinese-organized-crime-us-marijuana-market. These marijuana distribution and money laundering organizations exploit the "gray area" inhabited by marijuana in states where its cultivation and sale have been legalized to grow their networks and operate with less interference from regulatory authorities.

But despite the evolving regulatory environment around marijuana,[1] the defendants in this case were not operating in a "gray area."  The defendants did not merely fail to fill out the proper forms for a medical marijuana dispensary in Maryland or elsewhere.  Nor did they simply prefer to conduct their financial dealings outside of traditional channels.  This was at all times an illegal drug distribution operation that involved growing and moving many tons of marijuana throughout the United States and laundering millions of dollars of proceeds from that distribution.

---

[1] The government notes, for the Court's awareness, that the President recently issued an executive order directing the Attorney General to take "all necessary steps" to reschedule marijuana as a Schedule III controlled substance.  Exec. Order No. 14,370, 90 Fed. Reg. 60,541 (Dec. 18, 2025). The order is directed only at relaxing restrictions around marijuana's potential medical uses and research.  It is completely silent as to criminal enforcement.  And as is the case with ketamine (another Schedule III controlled substance), distribution of marijuana outside those limited medical contexts will remain illegal, even after rescheduling.  In other words, since the defendants in this case were not purporting to be medical researchers or to be opening medical dispensaries, the pending rescheduling of marijuana has no impact on sentencing considerations.

In general, the distribution and laundering scheme worked as follows:  Co-defendants Michael Micklos and Malik Bridgers[2] distributed large amounts of marijuana in Maryland and elsewhere.  Their primary source of supply for the marijuana and primary method of laundering the proceeds of their sales was a network overseen by co-Defendant Can Xu.  Co-conspirators in Xu's network managed large-scale marijuana cultivation operations in numerous states, such as Washington, Oregon, and Maine.  Other members of Xu's network managed the transportation of bulk quantities of marijuana through a network of couriers, such as the Defendant.  Micklos' and Bridgers' organizations then distributed the marijuana, using Telegram to advertise the strains and prices (on average, selling for roughly $1,000 per pound of marijuana), and the same network of couriers transported the proceeds back to Xu's network to be laundered further, often by sending money to the same people who had initially supplied the marijuana as payment for further supply. Over the course of the investigation, agents seized over $6 million in proceeds and over 1,000 kilograms of marijuana connected to the scheme.

One such seizure was the subject of the Defendant's conviction.  On April 18, 2024, the Defendant, working on behalf of Micklos, picked up a suitcase full of drug trafficking proceeds from co-defendant Michael Tilmon.  As was the case with prior similar trips, the Defendant was to drive the proceeds to the New York area, where he would transfer the money to another party, usually a courier working for Xu.  In exchange, and as was the case during a previous transaction on April 5, 2024, the Defendant would then pick up a supply of marijuana to bring back to Maryland.  But on this occasion, while driving the proceeds from Maryland to New York, the Defendant was stopped by New York State Troopers, who seized the suitcase and the $454,520

---

[2] Although Bridgers initially worked for Micklos, he eventually split off and distributed marijuana through his own organization, though he continued to use the general methods and pattern of distribution that Micklos used.

inside.  Based on recorded calls, surveillance, and other evidence gathered during the investigation, the amount of money and the pattern of activity on this trip was consistent with other courier activity conducted by both the Defendant and others.

### B.  Procedural History

On October 9, 2024, a federal grand jury for the District of Maryland returned a Superseding Indictment charging the Defendant with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h) (Count One), and Conspiracy to Distribute Marihuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count Two).  ECF No. 112.

On November 7, 2025, the government filed a Superseding Information charging the Defendant with Laundering of Monetary Instruments, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Count One).  ECF No. 309.  On November 10, 2025, the Defendant pled guilty to Count One of the Superseding Information.  ECF No. 315.  As part of the plea agreement and pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Defendant and the government agreed that a sentence of 60 months of probation was the appropriate disposition of this case.

## II.  U.S. SENTENCING GUIDELINES CALCULATION AND CRIMINAL HISTORY CATEGORY

As set forth in the Presentence Investigation Report ("PSR") ¶¶ 26–36, and consistent with the parties' plea agreement, the Defendant's U.S.S.G. offense level is calculated as follows:

- **Base Offense Level**: The Defendant's base offense level is 20, because the value of the laundered funds was more than $250,000 but less than $550,000.  U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(G).

- **6-Level Increase**: The Defendant receives a 6-level increase because he knew or believed that any of the laundered funds were the proceeds of or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance.  U.S.S.G. § 2S1.1(b)(1)(B)(i).

- **2-Level Increase**: The Defendant receives a further 2-level increase because he has been convicted of an offense under 18 U.S.C. § 1956.  U.S.S.G. § 2S1.1(b)(2)(B).

4

- **4-Level Reduction**:  The Defendant receives a 4-level reduction because he was a minor participant in the criminal activity.  U.S.S.G. § 3B1.2(a).

- **2-Level Reduction**:  The Defendant receives a further 2-level reduction because the defendant is a "Zero-Point Offender" who meets all the criteria set forth in Section 4C1.1(a)(1)–(11).  U.S.S.G. § 4C1.1(a).

- **3-Level Reduction**:  The Defendant receives a further 2-level reduction for acceptance of personal responsibility, and the Government will further move for an additional 1-level reduction for timely notification of his intention to enter a plea of guilty.  U.S.S.G. § 3E1.1(a) and (b).

The Defendant's final adjusted offense level is therefore 19.  PSR ¶ 36.

The Defendant has no criminal convictions, with the exception of one driving offense, and receives no Criminal History Points under the Guidelines.  The Defendant's Criminal History Category is therefore I.

Based on his calculated offense level of 19 and Criminal History Category of I, the recommended Guidelines range is 30–37 months' incarceration.

## III.  SENTENCING RECOMMENDATION AND 18 U.S.C. § 3553(a) FACTORS

The government submits that the appropriate sentence for the Defendant is 60 months of probation.  This sentence serves the goals set forth in 18 U.S.C. § 3553(a), particularly in light of the Defendant's minor role in the offense and otherwise clean record.

### A.  The Recommended Sentence Reflects the Seriousness of the Offense and Takes into Account the Defendant's Lack of Criminal History.

The overall scheme charged in this case is extremely serious.  The scope of the defendants' drug distribution and money laundering activity was extensive and complex.  Nevertheless, the Defendant's role in that activity was minor:  He was responsible for driving money and/or marijuana from Point A to Point B.  The amount of money involved in the April 18, 2024 transaction is reflective more of the sheer size of the overall business being conducted than it is of the Defendant's part in that business.  Moreover, the Defendant has a clean criminal history.  With

the exception of a single traffic offense, he has not even been charged with a crime prior to the instant case.

With all that in mind, the government submits that a lenient sentence for this Defendant would reflect the minimal nature of his involvement, promote respect for the law, and provide just punishment for the crime. 18 U.S.C. § 3553(a)(2)(A). The charged crime of money laundering is serious, and the Guidelines apply a significant enhancement when the laundering involves the proceeds of narcotics distribution. But the recommended sentence in this case takes into account that not all narcotics distribution is created equal; this was a case involving the sale of unadulterated marijuana, not fentanyl. The goal of promoting respect for the law is best served when the punishment fits the specific Defendant and his level of culpability.

## B. The Recommended Sentence Provides Adequate Deterrence and Correctional Treatment and Avoids Unwarranted Sentencing Disparities.

As noted, the Defendant's conviction in this matter will be his first outside of a single traffic offense. Five years of probation will provide the Defendant with supervision to ensure that this conviction becomes an aberration, not the beginning of a pattern. In addition to keeping the Defendant on track, the recommended sentence provides specific deterrence to further criminal conduct by leaving open the possibility of much more severe penalties should the Defendant violate the terms of his probation.

The recommended sentence also avoids unwarranted sentencing disparities. A co-defendant in this matter, Huayi Zhong, received a 36-month probationary sentence for his role as a courier working for co-defendant Xu. ECF No. 286. Zhong's offense of conviction involved a much smaller amount of money, but he, like the Defendant, worked as a courier. The recommended sentence reflects both the Defendant's similar role and the heightened severity of his conduct within that role.

IV.    **<u>CONCLUSION</u>**

For all the foregoing reasons, the government respectfully requests that the Court impose a sentence of 60 months of probation, which is sufficient, but not greater than necessary, to meet the sentencing goals of 18 U.S.C. § 3553(a).

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

    /s/
Alexander Levin
Assistant United States Attorney