**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. BAH-24-289** |
| | * | |
| **MICHAEL TILMON, III,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**\*\*\*\*\*\*\***

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its undersigned attorneys, respectfully submits this memorandum in advance of the sentencing hearing for Defendant Michael Tilmon, III, currently set for June 12, 2026. For the reasons set forth below, the government submits that a sentence of 72 months' incarceration is sufficient, but not greater than necessary, to fulfill the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Defendant played a key part in a sprawling drug distribution and money laundering conspiracy that stretched across the United States and beyond. In his role as the primary distributor for the Maryland wing of co-defendant Michael Micklos' drug trafficking organization, the Defendant was responsible for selling massive quantities of marijuana and starting the laundering process for the proceeds from those marijuana sales.

### A. Procedural History

On October 9, 2024, a federal grand jury for the District of Maryland returned a Superseding Indictment charging the Defendant with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h) (Count One); Conspiracy to Distribute Marihuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count Two); and Possession of a Firearm by a Prohibited

Person, in violation of 18 U.S.C. § 922(g) (Count Three).  ECF No. 112.  On April 21, 2026, the Defendant pled guilty to Count One of the Superseding Indictment.  ECF No. 378.

### B.  The Micklos/Xu Drug Trafficking and Money Laundering Organization.

The conspiracy at the heart of this case did not occur in a void.  As more states have loosened restrictions on marijuana, the illegal market has remained robust and has largely been taken over by Chinese criminal organizations.  *See Invasion of the Homeland: How China Is Using Illegal Marijuana to Build a Criminal Network Across America: Hearing Before the Subcomm. on Oversight, Investigations, and Accountability of the H. Comm. On Homeland Security*, 119th Cong. (Sept. 18, 2025) (witness statements); *Marijuana and Mexican Cartels: Inside the Stunning Rise of Chinese Money Launderers*, NBC News (Aug. 3, 2024), https://www.nbcnews.com/investigations/marijuana-mexican-cartels-stunning-rise-chinese-money-launderers-rcna158030; Sebastian Rotella et al., *Gangsters, Money and Murder: How Chinese Organized Crime Is Dominating America's Illegal Marijuana Market*, ProPublica (March 14, 2024), https://www.propublica.org/article/chinese-organized-crime-us-marijuana-market. These marijuana distribution and money laundering organizations exploit the "gray area" inhabited by marijuana in states where its cultivation and sale have been legalized to grow their networks and operate with less interference from regulatory authorities.

But despite the evolving regulatory environment around marijuana,[1] the defendants in this case were not operating in a "gray area."  The defendants did not merely fail to fill out the proper

---

[1] The government notes, for the Court's awareness, that the President recently issued an executive order directing the Attorney General to take "all necessary steps" to reschedule marijuana as a Schedule III controlled substance.  Exec. Order No. 14,370, 90 Fed. Reg. 60,541 (Dec. 18, 2025). The order is directed only at relaxing restrictions around marijuana's potential medical uses and research.  It is completely silent as to criminal enforcement.  And as is the case with ketamine (another Schedule III controlled substance), distribution of marijuana outside those limited medical contexts will remain illegal, even after rescheduling.  In other words, since the defendants

2

forms for a medical marijuana dispensary in Maryland or elsewhere.  Nor did they simply prefer to conduct their financial dealings outside of traditional channels.  This was at all times an illegal drug distribution operation that involved growing and moving many tons of marijuana throughout the United States and laundering millions of dollars of proceeds from that distribution.

In general, the distribution and laundering scheme worked as follows:  Co-defendants Michael Micklos and Malik Bridgers[2] distributed large amounts of marijuana in Maryland and elsewhere.  Their primary source of supply for the marijuana and primary method of laundering the proceeds of their sales was a network overseen by co-defendant Can Xu.  Co-conspirators in Xu's network managed large-scale marijuana cultivation operations in numerous states, such as Washington, Oregon, and Maine.  Other members of Xu's network managed the transportation of bulk quantities of marijuana through a network of couriers, such as the Defendant.  Micklos' and Bridgers' organizations then distributed the marijuana, using Telegram to advertise the strains and prices (on average, selling for roughly $1,000 per pound of marijuana), and the same network of couriers transported the proceeds back to Xu's network to be laundered further, often by sending money to the same people who had initially supplied the marijuana as payment for further supply. Over the course of the investigation, agents seized over $6 million in proceeds and over 1,000 kilograms of marijuana connected to the scheme.

**C. The Defendant's Role: Selling the Product and Starting the Laundering Process.**

Until his arrest in May 2024, the Defendant was Micklos' chief marijuana distributor for the Baltimore-based wing of the drug trafficking operation.  On a near-weekly basis, the Defendant

---

in this case were not purporting to be medical researchers or to be opening medical dispensaries, the pending rescheduling of marijuana has no impact on sentencing considerations.

[2] Although Bridgers initially worked for Micklos, he eventually split off and distributed marijuana through his own organization, where he continued to use the general methods and pattern of distribution that Micklos used.

oversaw the sale of hundreds of thousands of dollars' worth of marijuana for Micklos, sold both by the Defendant and other co-conspirators who reported to him. The Defendant was responsible for receiving bulk amounts of marijuana that would then be sold to customers who had placed orders on Micklos' Telegram. And the Defendant also served as the first step in the money laundering chain. After collecting sale proceeds, the Defendant arranged for the transportation of those funds up to New York, where they would be laundered by Xu and his associates for Micklos. Based on seizures, intercepted calls, and other evidence collected in this case, investigators estimate that roughly $500,000 was laundered back to the New York area every week.

The events surrounding the Defendant's May 13, 2024, arrest by officers of the Baltimore Police Department ("BPD") are representative of his part in the conspiracy. BPD officers saw the Defendant engaged in marijuana sales in an outdoor parking lot and, when taking the Defendant into custody, found $148,403.17 on his person, as well as marijuana and a handgun in his car. The next day, BPD officers recovered another $342,687 in cash from the Defendant's residence. The seized cash—totaling just under $500,000—is both the basis for the Defendant's sentencing guidelines calculation and representative of an average week of income for Micklos' Maryland distribution.

## II.    U.S. SENTENCING GUIDELINES CALCULATION AND CRIMINAL HISTORY CATEGORY

As set forth in the Presentence Investigation Report ("PSR") ¶¶ 29–39, the Defendant's U.S.S.G. offense level is calculated as follows:

- **Base Offense Level**: The Defendant's base offense level is 20, because the value of the laundered funds was more than $250,000 but less than $550,000, resulting in the addition of 12 points to the starting guidelines level of 2. U.S.S.G. §§2S1.1(a)(2) and 2B1.1(b)(1)(G).

- **6-Level Increase**: The Defendant receives a 6-level increase because he knew or believed that any of the laundered funds were the proceeds of or were intended to

4

promote an offense involving the manufacture, importation, or distribution of a controlled substance. U.S.S.G. §2S1.1(b)(1)(B)(i).

- **2-Level Increase**: The Defendant receives a further 2-level increase because he has been convicted of an offense under 18 U.S.C. § 1956. U.S.S.G. §2S1.1(b)(2)(B)

- **3-Level Reduction**: The Defendant receives a 2-level reduction for acceptance of personal responsibility, and the Government will further move for an additional 1-level reduction for timely notification of his intention to enter a plea of guilty. U.S.S.G. §3E1.1(a) and (b).

The Defendant's final adjusted offense level is therefore 25. PSR ¶ 39.

The Defendant has a significant criminal history, including multiple firearm and marijuana-related convictions at the state level in Maryland, resulting in a criminal history score of nine. The Defendant committed the instant offense while under a criminal justice sentence, raising that score to 10. *See* U.S.S.G. §4A1.1(e). The Defendant's Criminal History Category is therefore V.

Based on his calculated offense level of 25 and Criminal History Category of V, the recommended Guidelines range is 100–125 months' incarceration.

## III.    SENTENCING RECOMMENDATION AND 18 U.S.C. § 3553(A) FACTORS

The government submits that the appropriate sentence for the Defendant is 72 months' incarceration. This sentence serves the goals set forth in 18 U.S.C. § 3553(a). It captures the seriousness and scope of the drug trafficking and money laundering at issue, while balancing that with mitigating factors. It further affords appropriate deterrence to the Defendant and to others engaged in similar lines of criminal conduct. And it avoids unwarranted sentencing disparities.

### A. The Recommended Sentence Reflects both the Seriousness of the Offense and the Defendant's Significant Criminal History.

The overall scheme charged in this case is extremely serious. The scope of the defendants' drug distribution and related money laundering activity was extensive and complex. The Defendant played a key role in the criminal conduct by effectively overseeing sales in Maryland for Micklos and beginning the laundering process of the significant funds generated by those sales.

The "elephant in the room" bears further discussion:  This is an offense involving the distribution of marijuana and only marijuana.  As discussed above, Section I.B, *supra*, restrictions around marijuana have been loosened in many states, reflecting changing attitudes regarding the harmfulness of the drug.  At the same time, previously strong proponents of marijuana legalization have tempered their views after finding that the harms of an unregulated marijuana market are worse than had been predicted:

> [W]ider use has caused a rise in addiction and other problems.  Each year, nearly 2.8 million people in the United States suffer from cannabinoid hyperemesis syndrome, which causes severe vomiting and stomach pain.  More people have also ended up in hospitals with marijuana-linked paranoia and chronic psychotic disorders. Bystanders have also been hurt, including by people driving under the influence of pot.

N.Y. Times Editorial Board, *It's Time for America to Admit That It Has a Marijuana Problem*, N.Y. Times (Feb. 9, 2026), https://www.nytimes.com/2026/02/09/opinion/regulate-legalized-marijuana.html.  To be sure, marijuana is not fentanyl, and no one is suggesting that *Reefer Madness* was a documentary.  But there is harm.

Amidst this backdrop, the recommended sentence of 72 months—a significant downward variance from the Guidelines range—takes into account both the vast scale and seriousness of the criminal activity and the specific nature of the drug trafficking that was the basis for the Defendant's money laundering offense.  It also factors in the need to protect the public, which is heightened by the Defendant's possession of a firearm at the time of his arrest.

While the Defendant did not fill a leadership role in the conspiracy, his significant criminal history, which the government believes is the most serious criminal history among the defendants in this case, also weighs in favor of a sentence closer to the ringleaders and supervisors with comparatively less serious records.

### B.  The Recommended Sentence Affords Adequate Deterrence.

As mentioned previously, Section I.B, *supra*, illegal marijuana distribution networks like the one the Defendant participated in have flourished in the wake of loosened regulations.  One of the reasons for the quick and significant spread of these criminal enterprises has been the perceived lack of enforcement surrounding marijuana-related offenses.  That perception certainly appears to have motivated Micklos and his co-conspirators to brazenly advertise their activities and their official Telegram sales channel on social media.  The sentence the Court imposes in this matter should send a clear message that federal law will be enforced against these kinds of wide-ranging marijuana distribution schemes.

The proposed sentence achieves that goal of deterrence while still being more lenient than the Guidelines recommendation.  It sends a specific message to the Defendant that he cannot continue to engage in drug trafficking—even of "lesser" controlled substances—and money laundering once released.  For the Defendant particularly, it also achieves a deterrent goal by being a more severe sentence than has previously been imposed at the state level.  It is clear that shorter and partially suspended sentences have had no deterrent effect to date.  And the proposed sentence sends a general message to others engaged in the same activity that they cannot operate their illegal distribution networks with impunity.

### C.  The Recommended Sentence Avoids Unwanted Sentence Disparities.

The Court has already sentenced two co-defendants in this matter, Huayi Zhong and William Brown, III.  As explained in the related sentencing memoranda—and as stated plainly during each of their sentencing hearings—those two defendants were both couriers who were at the lowest level of culpability among all the defendants charged in this matter.  And both were zero-point offenders.  As a result, the Court accepted plea agreements to probationary sentences for both.

The Defendant was a not a courier. He was a significant player in the conspiracy, selling mass quantities of marijuana and then beginning to launder the millions of dollars generated from those sales. A sentence of 72 months' incarceration reflects the Defendant's level of culpability and will ensure that the Court can impose adequate and just sentences on the co-defendants in the case, taking into account the variations in criminal history.

Additionally, the Court has noted in prior sentencing hearings the lack of adequate cases to compare to the instant case, largely because many sentences related to marijuana trafficking were imposed when guidelines—and enforcement attitudes in general—were harsher than at present. The Court has specifically suggested viewing sentencing as analogous to sentencing for a cigarette smuggling case charged under 18 U.S.C. § 2341. While there are factors that make the instant case more serious than a prosecution for contraband cigarette sales, where the primary articulated harm is lost tax revenue, there are a few cases that at least provide informative guideposts.

Within the Fourth Circuit, there are two instructive cases addressing large-scale contraband cigarette sales and associated money laundering schemes: *United States v. Patel et al.*, Crim. No. 11-cr-31 (W.D. Va.), and *United States v. Marcelino et al.*, Crim. No. 12-cr-77 (E.D. Va.). The recommended sentence for the Defendant in this case would be in line with the sentences that were handed down in each, accounting for the differences between the charged conduct and the criminal history of each defendant.

In *Patel*, the offenses related to roughly $20 million in smuggled cigarettes and associated money laundering charges. The ringleader of the scheme, Anjay Patel, was ultimately sentenced to 84 months' imprisonment on the money laundering charges (running concurrent to the statutory maximum of 60 months' imprisonment on the contraband cigarette charges). Anjay Patel's

8

guidelines offense level was 30, and his Criminal History Category was I.  *See* Government's Sentencing Memorandum for Anjay Patel, Case No. 11-cr-31, ECF 569 (W.D. Va. 2013).  A lower-level defendant in the scheme, Viresh Patel, made multiple controlled purchases of contraband cigarettes.  Viresh Patel was sentenced to 42 months' imprisonment.  His guidelines offense level was 25, and his Criminal History Category was I.  *See* Government's Sentencing Memorandum for Viresh Patel, Case No. 11-cr-31, ECF 566 (W.D. Va. 2013).  Both Patels were sentenced after entering guilty pleas.  Other defendants in the case received sentences ranging from probation to 60 months' imprisonment, varying by their apparent level of culpability in the offense.

In *Marcelino*, the charged offenses also related to a conspiracy to smuggle contraband cigarettes and the related money laundering conspiracy, which appeared to involve a little over $5 million.  Onesimo Marcelino was a leader in the scheme.  His guidelines offense level was 30, Criminal History Category III, and the court ultimately sentenced him to 132 months' imprisonment on the money laundering conspiracy, to be served concurrently to 60 months imposed on the contraband cigarette offense.  *United States v. Marcelino*, Case No. 12-cr-77, 2017 WL 4250047, *7 (E.D. Va. Sept. 25, 2017).  Notably, although Marcelino pled guilty, he appears to have disputed several facts and fallen short of credit for acceptance of responsibility.  *Id.*

The above sentences appear to be largely consistent with sentences handed down in similar cases outside the Fourth Circuit.  *See, e.g.*, *United States v. Shafique*, Crim. No. 12-636 (D.N.J.) (imposing a within-guidelines sentence of 57 months for cigarette smuggling, money laundering, and conspiracy to commit bank and wire fraud); *United States v. Zyuz*, Crim. No. 16-cr-66 (E.D. Mo.) (imposing a statutory maximum 60-month sentence for cigarette smuggling); *United States v. Khan*, 771 F.3d 367, 372–73 (7th Cir. 2014) (affirming 21-month sentence for cigarette smuggling related to under $500,000 in cigarettes).

As an initial matter, the Defendant here did not smuggle cigarettes. He sold marijuana, which is a controlled substance, and laundered the proceeds from those sales. The harm caused by the Defendant and his co-conspirators was not merely lost tax revenue, but the criminal economy surrounding the illegal marijuana industry. Nevertheless, even if this case is treated as totally analogous to a contraband cigarette matter, the proposed sentence of 72 months avoids unwanted sentencing disparities with those cases. The Defendant's conduct and the scope of the full conspiracy are most directly comparable to Viresh Patel. But the higher recommended sentence here takes into account the Defendant's more serious criminal history and the circumstances surrounding his offense. It also comes short of the sentence imposed on "ringleader" defendants in both *Patel* and *Marcelino*, which is appropriate given the Defendant's lower level of culpability in the scheme at hand.

## IV.    CONCLUSION

For all the foregoing reasons, the government respectfully requests that the Court impose a sentence of 72 months' incarceration, which is sufficient, but not greater than necessary, to meet the sentencing goals of 18 U.S.C. § 3553(a).

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

\_\_\_/s/_____
Alexander Levin
Assistant United States Attorney

10